IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ASHLEY COLLET,<br><br>  Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>  Defendants/Counterclaim Plaintiffs. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:20-cv-00906-TC-DAO<br><br>District Judge Tena Campbell<br>Magistrate Judge Daphne A. Oberg |

  This is a declaratory judgment action in which the parties have tasked the court with resolving an insurance coverage dispute. There are two competing claims for declaratory relief, one by Plaintiff Ashley Collet, and another by Defendants State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company (together, "State Farm"). Ms. Collet asks the court to conclude there is insurance coverage, and State Farm asks the court to conclude there is no coverage.

  State Farm has now moved for summary judgment on Ms. Collet's claim. (ECF No. 17.) For the following reasons, the court GRANTS State Farm's motion for summary judgment.

## FACTUAL BACKGROUND

  This case began with a car accident in South Jordan, Utah. Ms. Collet's mother, Jackie Myers, was driving a 2013 Subaru Outback. Ms. Collet and her grandfather (Ms. Myers's father), Robert Pistorius, were passengers in the car. Ms. Myers allegedly ran a red light, and the Subaru was struck by another vehicle, injuring Ms. Collet.

  Ms. Collet sued her mother for damages in state court, but she saw another potential avenue for relief. Mr. Pistorius had a car insurance policy issued by State Farm Mutual

Automobile Insurance Company and a personal liability umbrella policy (PLUP) issued by State Farm Fire and Casualty Company.  Because Ms. Collet, her mother, and her grandfather lived together, Ms. Collet surmised that her grandfather's two insurance policies might cover her damages.  Based on the policies' terms, limitations, and exclusions, State Farm declined to provide this additional liability coverage, so the parties agreed to take the matter to federal court and ask for competing declaratory judgments.

After a few months of discovery, State Farm moved for summary judgment on Ms. Collet's claim for declaratory relief, invoking the same terms, limitations, and exclusions that prompted it to deny coverage in the first place.  (ECF No. 17.)

## LEGAL STANDARD

In general, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material if, under the governing law, it could affect the outcome of the lawsuit." Arlin Geophysical Co. v. United States, 946 F.3d 1234, 1237 (10th Cir. 2020) (quoting Cillo v. City of Greenwood Vill., 739 F.3d 451, 461 (10th Cir. 2013)).  "A factual dispute is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." Id. (quoting Cillo, 739 F.3d at 461).

The movant must first show the "absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." Talley v. Time, Inc., 923 F.3d 878, 893–94 (10th Cir. 2019) (quoting Teets v. Great-W. Life & Annuity Ins. Co., 921 F.3d 1200, 1211 (10th Cir. 2019)).  But the court

2

must always view the facts and draw all reasonable inferences in favor of the nonmovant. Hall v. Allstate Fire & Cas. Ins. Co., 20 F.4th 1319, 1323 (10th Cir. 2021) (citing Cillo, 739 F.3d at 461).

## ANALYSIS

The parties agree that Utah law applies here. In Utah, insurance policies are treated as ordinary contracts. Therefore, "if the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language." Benjamin v. Amica Mut. Ins. Co., 2006 UT 37, ¶ 14, 140 P.3d 1210, 1213 (quoting Saleh v. Farmers Ins. Exch., 2006 UT 20, ¶ 21, 133 P.3d 428).

State Farm's arguments are straightforward. There is no coverage under the car policy because Ms. Myers's 2013 Subaru Outback is not a covered vehicle. There is no coverage under the PLUP because Ms. Collet and Ms. Myers are also insureds, and injuries to insureds are excluded from coverage. The court will discuss each argument in turn.

### I.     The Car Policy

Mr. Pistorius's car policy, No. 701 2712-A22-44L, provides coverage for his 2014 Buick LaCrosse. Under the policy,[1] State Farm will "pay damages an insured becomes legally liable to pay because of[] bodily injury to others." (Mot. Summ. J. Ex. at 61, ECF No. 17-1.) "Insured" is defined as "you and resident relatives for[] the ownership, maintenance, or use of[] your car; a newly acquired car; or a trailer; and the maintenance or use of[] a non-owned car; or a temporary substitute car." (Id. at 26.) To be a "resident relative," one must live with and be related to the named insured. (Id. at 25–26.) Because Ms. Myers and Ms. Collet lived with and are related to Mr. Pistorius, they are both resident relatives.

---

[1] The insurance policies use bold and italic fonts to identify key terms, along with numerals. For ease of reading, the court will remove these emphases and numerals.

As noted above, there are five categories of vehicles covered by the car policy: "your car," a "newly acquired car," a "trailer," a "non-owned car," and a "temporary substitute car." (Id. at 61.) "Your car" means "the vehicle shown under "YOUR CAR" on the Declarations Page." (Id. at 26.) A "newly acquired car" is "a car newly owned by you." (Id. at 25.) A "trailer" is "designed to be pulled by a private passenger car" and is "not designed to carry persons." (Id. at 26.) A "non-owned car" is "a car that is in the lawful possession of you or any resident relative and that neither[] is owned by you; any resident relative; [or] any other person who resides in your household; . . . nor has been operated by, rented by, or in the possession of[] you; or any resident relative during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or loss." (Id. at 25.) Finally, a "temporary substitute car" is "a car that is in the lawful possession of the person operating it and that[] replaces your car for a short time while your car is out of use due to its[] breakdown; repair; servicing; damage; or theft; and neither you nor the person operating it own or have registered." (Id. at 26.)

State Farm argues that because the 2013 Subaru Outback does not fall into any of these five categories, it is not covered by the car policy. The court agrees. The only car listed under "YOUR CAR" on the Declarations Page is Mr. Pistorius's 2014 Buick LaCrosse; the Subaru is not identified. (Id. at 20.) Ms. Myers owns the Subaru, which disqualifies it as "a car newly owned by" Mr. Pistorius. The Subaru is not a trailer, as it is "designed to carry persons." Although the Subaru is "in the lawful possession of [a] . . . resident relative," it is "owned" by that same resident relative—Ms. Myers. And the Subaru did not replace Mr. Pistorius's car while his car was "out of use"; besides, Ms. Myers owns it. None of the five categories apply, so Mr. Pistorius's car policy does not provide coverage for Ms. Collet's injuries.

4

## II. The PLUP

Mr. Pistorius's umbrella policy, No. 44-BG-S413-4, provides excess liability coverage for losses "for which the insured is legally liable." (Mot. Summ. J. Ex. at 11, ECF No. 17-1.) It excludes coverage for "bodily injury or personal injury to any insured as defined in part a. or b. of the definition of insured." (Id. at 14.) There, "insured" is defined as "you and your relatives whose primary residence is your household." (Id. at 7.) In other words, though the policy covers Ms. Myers, State Farm will not pay for the personal injuries of any relatives who live with Mr. Pistorius. Because Ms. Collet is both related to and lives with Mr. Pistorius, she is an "insured," and her injuries are ineligible for PLUP coverage.

## III. Ms. Collet's Response

The "plain meaning of the contractual language" is clear: Ms. Collet's injuries are not covered under either of Mr. Pistorius's insurance policies. Benjamin, 2006 UT 37, ¶ 14, 140 P.3d at 1213. Ms. Collet responds with two extratextual arguments. First, she states that in Utah, auto insurers must provide coverage to resident relatives "to the same extent as the named insured," and because Mr. Pistorius would have been covered had he been driving the Subaru, Ms. Myers should be covered, too. Second, she argues that because Ms. Myers's Subaru influenced the premiums paid on the car policy and on the PLUP, and because the PLUP included the Subaru as an "automobile exposure," it would be unjust to exclude coverage for the Subaru accident. Given the plain meaning of the car policy and the PLUP, none of these arguments hold up.

### A. Section 31A-22-303

Utah requires that insurers "insure persons related to the named insured by blood, marriage, adoption, or guardianship who are residents of the named insured's household . . . to the same extent as the named insured." Utah Code Ann. § 31A-22-303(1)(a)(iii). State Farm

5

maintains that this section does not apply to "unnamed motor vehicles," and even if it did, the car policy would not cover Mr. Pistorius had he been driving the Subaru. State Farm is correct on both fronts.

Section 31A-22-303 requires that insurers "designate by appropriate reference all the motor vehicles on which coverage is granted" and "insure any other person using any named motor vehicle with the express or implied permission of the named insured." § 31A-22-303(1)(a)(ii)(A). And State Farm did this on Mr. Pistorius's car policy. It "designated by appropriate reference" and "named" one vehicle: the 2014 Buick LaCrosse. (Mot. Summ. J. Ex. at 20, ECF No. 17-1.) The Subaru is not listed, so it is not covered. The Buick is the only vehicle for which there is coverage under the car policy.

Turning to the question of whether Mr. Pistorius would have been covered had he been driving the Subaru, State Farm still wins. The counterfactual analysis is identical to the court's reasoning above. Even if Mr. Pistorius were the driver, the Subaru would still not be "your car," a "newly acquired car," a "trailer," a "non-owned car," or a "temporary substitute car" under the car policy definitions. The driver's identity is irrelevant; the owner (Ms. Myers) remains unchanged.

### B.  Policy Premiums

Now, to Ms. Collet's other arguments. She points to the PLUP Renewal Certificate, which lists two "Automobile Exposures"—i.e., the Subaru and the Buick. (Mot. Summ. J. Ex. at 2, ECF No. 17-1.) The PLUP requires a minimum of $250,000/$500,000 in underlying automobile bodily injury coverage before it will kick in. (Id. at 3.) Because Ms. Myers's car insurance policy on the Subaru has $50,000/$100,000 limits, Ms. Collet argues that the Subaru

would never qualify for PLUP coverage, so it would be unjust for State Farm to include it as an Automobile Exposure without providing coverage.

But the Renewal Certificate is not the insurance policy; it is extrinsic. The court cannot consider extrinsic evidence where the policy language is unambiguous. See Café Rio, Inc. v. Larkin-Gifford-Overton, LLC, 2009 UT 27, ¶ 25, 207 P.3d 1235, 1240. Even so, Ms. Collet misses the point. The PLUP excludes coverage for an insured's own bodily injuries, and Ms. Collet is an insured. (Mot. Summ. J. Ex. at 14, ECF No. 17-1.) It does not matter whether the Subaru had $50,000 or $500,000 in underlying coverage. Under no scenario would Mr. Pistorius's PLUP cover Ms. Collet's injuries.[2]

## CONCLUSION

The plain meaning of the two insurance policies is clear, and Ms. Collet offers no persuasive reason that the court should conclude otherwise. Neither of Mr. Pistorius's insurance policies cover Ms. Collet's injuries. Accordingly, **IT IS ORDERED** that State Farm's motion (ECF No. 17) is GRANTED.

DATED this 24th day of February, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

---

[2] In any event, it was Ms. Myers's choice to carry $50,000/$100,000 in bodily injury coverage. Ms. Collet never explains why State Farm should be blamed for this decision.